UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-20639-CIV-ALTONAGA/SIMONTON

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ROVIN SINGH individually, and as parent and  :
legal guardian of J.S., V.S., Jy.S., and Ve.S.,  :
                                                     :
                   Plaintiffs,      :   CARIBBEAN AIRLINES LIMITED'S
                                                     :   MEMORANDUM OF LAW IN
                                                     :   OPPOSITION TO PLAINITFFS'
                   v.                                     :   <u>REQUEST FOR SANCTIONS</u>
                                                     :
CARIBBEAN AIRLINES LIMITED,     :
                                                     :
                 Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In accordance with Trinidad and Tobago Civil Aviation Regulations (and indeed, U.S. Federal Aviation Regulations and standard practice of the entire airline industry), CAL's Operations Manual provides for preservation of a Cockpit Voice Recorder ("CVR") *only* following an "accident" or near accident relating to the operation of aircraft. *See generally* Affidavit of Captain Robert A. Shore sworn to on November 18, 2013 ("Shore Aff.") (CAL Exhibit A) and Declaration of Varma Khillawan dated November 19, 2013 (CAL Exhibit B); *see also* CAL Operations Manual § 11.1.7.2 (requiring preservation of the CVR, if relevant, in the event of an "accident" or "serious incident") (Pls.' Ex. 14). An "accident" is defined at CAL Operations Manual § 11.1.1.1 as "[a]n occurrence associated with the operation of an aircraft," (Pls.' Ex. 14), resulting in a fatal or serious injury. Plaintiffs conveniently fail to cite the remainder of the definition, which states, "[e]xcept when the injuries are from natural causes . . . ." *Id*. A "serious incident," distinct from an "incident,"[1] involves circumstances when an "accident nearly occurred." *Id*. There was no suggestion at the time, nor has there been any allegation since, that CAL's operation of the aircraft

---

[1] The definition of "incident" is found at § 11.2.1.1 as "an occurrence, other than an accident, associated with the operation of an aircraft which affects or could affect the safety of operation." Pls.' Ex. 14.

1

resulted in a blood clot causing Mr. Singh's stroke. Rather, this litigation relates to the BW 484 flight and cabin crew response to Mr. Singh's stroke, an injury that was indeed the result of natural causes unrelated to the aircraft thus rendering the BW 484 episode neither an "accident" nor a "serious incident."[2]

CVRs are installed in aircraft to record data concerning the mechanical operation of aircraft to assist government investigations into accidents for the future safety of operation, and the regulations for preserving them reflect this narrowly-defined purpose. *See* Shore Aff., at ¶ 8; *see also* 49 U.S.C. § 1154 (creating special rules to protect CVRs from discovery outside of NTSB proceedings). The events on board the BW 484 on December 15, 2011 do not trigger the preservation of the CVR because the aircraft operated normally to its scheduled destination.

Based upon CAL's conformance with the above policy, procedure, practice and regulation, an award of sanctions against CAL should not be imposed because a duty to preserve had not been triggered at the time the CVR was overwritten.[3] *See* Fed. R. Civ. P. 37(e). First, no counsel had been notified of the BW 484 episode at the time the CVR had been overwritten. *See Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 09-61166-CIV, 2011 WL 1456029, at *12 (S.D. Fl. Apr. 5, 2011) (citing *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 197-198 (S.D.N.Y. 2007) for the proposition that the preservation obligation runs first to counsel). None of the recipients of the emails attached as Pls.' Exs. 7 and 13 are lawyers, nor executive management.[4]

---

[2] Separate and apart from the reporting procedures following a "serious injury" or an "incident" as referenced by plaintiffs (Pls.' Memo. at p. 2), § 11.1.7.2's CVR-preservation protocol is triggered only by an "accident" or "serious incident." *See* Pls.' Ex. 14. In any event, Mr. Singh's injury would not have been considered a "serious injury" (*see* § 11.1.1.1 – "an injury sustained by a person in an accident"); an "incident" (*see supra*); or an "occurrence" (*see* § 11.1.1.1 – "an incident, serious incident or accident") pursuant to CAL Operations Manual as the episode did not involve injuries as a result of the operation of aircraft. *See* Pls.' Ex. 14.

[3] The Flight Data Recorder is a separate and distinct piece of equipment from the CVR, and defense counsel's inadvertent reference to its preservation policy (Pls.' Ex. 20) should be disregarded as totally irrelevant.

[4] Plaintiffs' reference to the Diversion Protocol (Pls.' Ex. 16 at p. 7) requiring that the Legal Department be notified of a diversion is misplaced as the BW 484 did not divert. The testimony of Neil Gajadhar does not state that Duty Manager Alim Ghany did contact or should have contacted the Legal Department. Rather, Mr. Gajadhar stated that Mr. Ghany "did follow the diversion procedures, had discussions with the captain." *See* Deposition of Neil Gajadhar taken on October 4, 2013 at pp. 37 (Pls.' Ex. 4). Plaintiffs fail to reference the obvious diversion

Second, an injury alone is not sufficient to trigger the duty to preserve. Where it is within the ordinary course of a party's business to destroy or overwrite documents or recordings, some explicit indication of impending litigation is required to trigger the duty to preserve. *See Silhan v. Allstate Ins. Co.*, 236 F. Supp. 2d 1303, 1313 (N.D. Fla. 2002) ("It is essentially impossible . . . to hold onto every piece of potential evidence just because there is a possibility that litigation may arise sometime in the future . . . The more prudent approach would be for a duty to arise when the possessor of the evidence is informed by the plaintiff that a lawsuit will be (or is) filed."); *see also Nye v. CSX Transp., Inc.*, 437 F.3d 556, 569 (6th Cir. 2006) (finding it "dispositive" that tape-recorded communications were "recycled" before the opponent "made his discovery request and before the case was filed."); *McGinnity v. Metro-N. Commuter R.R.*, 183 F.R.D. 58, 59-60 (D. Conn. 1998) (finding no duty to preserve existed, despite possibility of litigation, where defendant's "normal course of business is to erase tapes after thirty calendar days if they are not otherwise held or restricted" and [n]o attorney or insurance adjuster requested that defendant retain the tapes.).

Third, various unrelated litigations against CAL do not trigger any such preservation duty to the plaintiffs in the instant action. *See, e.g., Point Blank Solutions*, 2011 WL 1456029, at *12 (holding that prior litigations do not trigger a duty to preserve vis-à-vis entities not parties to the prior litigations and citing *Silhan*, 236 F. Supp. 2d at 1309 n. 8).

Fourth, the BW 484 flight, cabin and ground crew received no indication of ill-will or signal of impending litigation from Mr. Singh's family. *See St. Cyr v. Flying J, Inc..*, 2007 WL 1716365, at *2 (S.D. Fla. 2007) (in the absence of some outside obligation to retain evidence, the

---

procedure being discussed by Mr. Gajadhar, i.e., § 1.5 of CAL Safety and Emergency Procedures Manual, which states that "The Captain in conjunction with SOC will determine whether the flight will divert and the airport to which the diversion will occur." Pls.' Ex. Ex. 10 at p. 23. In response to plaintiffs' counsel's question, "Did [the Captain] ever tell you why he didn't go to Nassau?" Mr. Gajadhar responded, "No, because it was part of his procedures, I guess, Miami was the suitable point." *Id.* at 38. Mr. Ghany's testimony also references his discussions with the Captain pursuant to CAL SEP Manual § 1.5 to assist in determining the most suitable airport. *See* Deposition of Alim Ghany taken on October 4, 2013 at p. 29 (Pls.' Ex.3).

3

legal duty to preserve evidence only attaches where a party reasonably anticipates litigation or potential litigation). On the contrary, Mr. Singh's sister, Rita Singh, thanked the crew effusively for their cooperation and care. *See* Deposition of Mahmoud Sabha taken on October 24, 2013 at p. 57 attached as CAL Exhibit C;[5] *see also* Deposition of Irina Blake taken on October 2, 2013 at p. 54 attached as CAL Exhibit D.[6] Based on a reasonable interpretation of the circumstances, the CAL crew was not aware of the possibility of litigation and there was thus no duty to preserve.

Moreover, even if CAL had been under a duty to preserve the CVR, the BW 484 crew's decision not to interrupt the auto-overwrite does not merit a spoliation sanction because the contents of the CVR are not "absolutely crucial" to the plaintiffs' ability to prove a prima facie case. *Point Blank Solutions*, 2011 WL 1456029, at *27 (quoting *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.,* 165 F. Supp. 2d 1345, 1360 (S.D. Fla. 2001)). Plaintiffs have offered no evidence that they are "unable to prove [their] underlying action owing to the absence of the [CVR]." *Id.* Plaintiffs argue that the CVR recordings are "the most powerful evidence in the case demonstrating CAL's liability," (Pls.' Memo. at p. 1), but the fact that the evidence is potentially useful does not make it crucial. *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 280 F.R.D. 694, 696 (S.D. Fla. 2012) ("In meeting the requirement to demonstrate that the spoliated evidence was **crucial** to the movant's ability to prove its *prima facie* case or defense, it is not enough that the spoliated evidence would have been relevant to a claim or defense." (emphasis in original)). In reality, the information stored on the CVR[7] would be cumulative to the testimony of Captain Shafeez Shageer, First Officer Monique Nobrega, Captain Yanlal Dass and Duty Manager Alim Ghany – as they have each testified as to their recollection of the conversations in and with the

---

[5] "Question: And do you know who ultimately made the decision to go on to Miami? Answer: The sister."
[6] "[Rita Singh] expressed gratitude that we were landing in Miami…she thanked me profusely for helping."
[7] Communications regarding the onset of symptoms by Mr. Singh would have been overwritten during the BW 484, and information relating to a potential diversion to San Juan is in fact captured on the MedAire phone patch recording.

cockpit during Flight BW 484.[8]  Additionally, documents created contemporaneously with the episode support such testimony.[9]  That plaintiffs would like the opportunity to rebut such testimony and documentary evidence, as it is unfavorable to their theory, does not render the CVR "crucial" to plaintiffs' prima facie case.

Finally, in the absence of direct evidence, bad faith may be proved circumstantially, but only where "the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *First Universal Lending*, 773 F. Supp. 2d at 1352-54.  Here, alternative, good-faith explanations for the crew's decision not to interrupt the auto-overwrite exist: first, they were following protocol; second, they documented the episode; third, they were relying on expressions of gratitude from Rita Singh.  Indeed, plaintiffs have offered no evidence that any member of the BW 484 crew ever made an affirmative decision not to interrupt the auto-overwrite; instead, the crew continued with the turnaround flight according to its training, without considering the possibility that the CVR might contain evidence hypothetically relevant to a conceivable lawsuit.

Based upon the foregoing, plaintiffs' Request for Sanctions should be denied in its entirety.

Dated: New York, New York
November 20, 2013

---

[8] Captain Shageer and Duty Manager Alim Ghany both testified that they had a discussion after the conversation with MedAire as to the suitability of Nassau versus Miami and as to improvement in Mr. Singh's condition. *See* Depo. of Captain Shafeez Shageer taken on September 30, 2013 at pp. 96:6-20, 98:4-8, 99:17-19, 100:3-101:5; 158:17-159:18 (Pls.' Ex. 2); *see also* Depo. of Alim Ghany taken on October 4, 2013 at pp. 30:7-32:15 ("[The Captain] told me the passenger was getting movement in his arms…He was told…he need to divert…but the suitability of the airport we are looking at based at the time, because we have a lot of problem with Nassau, of that airport communication-wise…The ground handlers at Nassau, and based on that and the time it would take to go there to setup this procedure was almost the same time to go into Miami where the medical facilities was better facility at the time.") (Pls.' Ex. 3).

[9] *See* BW 484 Flight Plan (Pls.' Ex. 10 at p. 11), on which the Captain wrote that CAL Systems Operations Control "advised to continue to MIA" and "PAX seated 23F condition seems to be improving;" *see also* Duty Manager Alim Ghany Shift Report (Pls.' Ex. 9), which states "While the crew speaking to medlink the pax was able to move his arm.  Flight continue to MIA."

Respectfully Submitted,

By    /s/ Robert C. Owens
           Robert C. Owens, Esq.
Fla. Bar No. 273988
bobowens@avlaw.com
ROBERT C. OWENS, P.A.
18890 SW 264th Street
Miami (Homestead), Florida 33031
Telephone: 305-245-6813
Facsimile:  305-245-6403

and

Allison M. Surcouf, Esq. (*pro hac vice*)
asurcouf@condonlaw.com
John Maggio, Esq. (*pro hac vice*)
jmaggio@condonlaw.com
Condon & Forsyth LLP
7 Times Square
New York, New York 10036
Telephone:  212-490-9100
Facsimile:  212-370-4453

Attorneys for Defendant
CARIBBEAN AIRLINES LIMITED

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that counsel for defendant have conferred with all parties who may be affected by the relief sought in this Motion in a good faith effort to resolve the issues raised in the Motion.

           /s/ Robert C. Owens
                Robert C. Owens, Esq.

6

## CERTIFICATE OF SERVICE

      I hereby certify that on November 20, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                                    s/ *Robert C. Owens*
                                                    _____
                                                    Robert C. Owens

## SERVICE LIST

Christopher W. Wadsworth, Esq.
cw@wadsworth-law.com
Raymond R. Dieppa
rrd@wadsworth-law.com
WADSWORTH HUOTT, LLP
14 N.E. 1st  Avenue
10th Floor
Miami, Florida 33132
Telephone (305) 777-1000
Facsimile:  (305) 777-1001
*Attorneys for Plaintiff*
ROVIN SINGH
By CM/ECF